# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

ROBERT DOLLINGER,                    )       Case No. 1:20-cv-00044
                                     )
    Plaintiff,                      )       Judge J. Philip Calabrese
                                     )
v.                                   )       Magistrate Judge
                                     )       Jonathan D. Greenberg
COMMISSIONER OF SOCIAL               )
SECURITY,                            )
                                     )
    Defendant.                      )
                                     )

## OPINION AND ORDER

Plaintiff Robert Dollinger filed applications for disability, disability insurance benefits, and supplemental security income, which the Commissioner denied. Plaintiff appealed, and the Magistrate Judge recommended that the Court affirm in part and reverse and remand in part the Commissioner's final decision. The Commissioner objects to the Magistrate Judge's Report and Recommendation. For the reasons that follow, the Court **SUSTAINS** the Commissioner's objection (ECF No. 16), **DECLINES TO ADOPT IN PART** the Magistrate Judge's Report and Recommendation (ECF No. 15), and **AFFIRMS** the Commissioner's denial of Plaintiff's applications.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2013, Mr. Dollinger applied for a period of disability and disability insurance benefits. (ECF No. 9, PageID #256.) In September 2014, he applied for supplemental security income. (*Id.*) Both applications alleged disability beginning in March 2012. (*Id.*) The Commissioner denied his claims initially and on

reconsideration. (*Id.*, PageID #279 & #284.) Then, Mr. Dollinger requested a hearing before an administrative law judge, who also denied the applications. (*Id.*, PageID #253.) On review, the Appeals Council vacated the administrated law judge's decision and remanded the case. (*Id.*, PageID #276.) On remand, the administrative law judge held a second hearing and again denied Mr. Dollinger's application. (*Id.*, PageID #59.)

### A. Medical Evidence

Relevant to Plaintiff's arguments on appeal, the ALJ considered opinion evidence from Mr. Dollinger's treating physician Dr. Harris, his treating psychologist Dr. Sipps, and from State agency medical and psychological consultants.

### A.1. Dr. Harris

On referral from the spine clinic for chronic low back pain, Mr. Dollinger first saw Michael Harris, M.D., on January 8, 2014. (*Id.*, PageID #960.) On that visit, Dr. Harris found that Mr. Dollinger had "ongoing significant cognitive deficits and persistent back pain." (*Id.*, PageID #953.) Dr. Harris performed follow-up examinations in March, May, and August 2014 and noted on each occasion that Mr. Dollinger's back pain was improving with conservative management. (*Id.*, PageID #925, 1070 & #1074.) On each office visit, Dr. Harris created a thorough record containing Mr. Dollinger's past medical history, surgical history, social history, medications, the results of physical and neurological exams, Dr. Harris's impression, and a list of recommendations.

On August 28, 2015, Mr. Dollinger again saw Dr. Harris for a follow-up examination. (*Id.*, PageID #1226.) As during the other office visits, Dr. Harris created a thorough record containing a narrative description of Mr. Dollinger's medical history, the results of physical and neurological exams, Dr. Harris's impression, and two recommendations. (*Id.*, PageID #1226–28.) Dr. Harris described his impression that Mr. Dollinger's chronic low back pain combined with other health concerns "resulted in cognitive deficits, headaches, concentration issues, and chronic pain." (*Id.*, PageID #1228.) At the end of Dr. Harris's narrative description of Mr. Dollinger's medical history, Dr. Harris wrote that overall Mr. Dollinger was in a "pretty good place" but still "very limited with regard to his functional capabilities" and still had "significant back pain." (*Id.*, PageID #1227.) Under the section titled "recommendations," Dr. Harris first recommended that Mr. Dollinger continue his drug regimen but avoid opioids. (*Id.*, PageID #1228.) Second, Dr. Harris wrote:

> From a functional standpoint, he remains very limited. As outlined above, he needs to lie down frequently throughout the day in order to get through the day. He cannot sit or stand for more than about 30–40 minutes and is incapable of sustaining gainful employment based on the physical issues with his back as well as the cognitive issues from the meningitis. His disability papers were completed today.

(*Id.*)

Dr. Harris completed two medical source statements, on check-box forms, regarding Mr. Dollinger's physical capacity. (*Id.*, PageID #1148 & #1342.) In the medical source statement completed August 28, 2015, Dr. Harris opined that Mr. Dollinger was limited in his ability to lift, carry, stand, walk, sit, and perform other postural activities such as kneeling, due to

laminectomy and staph meningitis. (*Id.*, PageID #1148.) Further, Dr. Harris opined that Mr. Dollinger must avoid heights and temperature extremes and required additional unscheduled rest periods during a workday. (*Id.*, PageID #1149.) On March 28, 2017, Dr. Harris completed a second medical source statement showing some improvement in Mr. Dollinger's work-related capabilities. (*Id.*, PageID #1342–43.)

Mr. Dollinger completed additional follow-up office visits in December 2015, August and November 2016, and March 2017. (*Id.*, PageID #1205, 1274, 1280 & #1413.) Dr. Harris continued to treat Mr. Dollinger for low back pain as well shoulder pain and knee pain. (*Id.*)

### A.2. Dr. Sipps

On referral, Mr. Dollinger saw Gary Sipps, Ph.D., for relaxation techniques in January 2013. (*Id.*. PageID #1956.) Mr. Dollinger began regular visits with Dr. Sipps for pain management psychotherapy, relaxation techniques, hypnosis, biofeedback, and stress management. (*Id.*) Between 2014 and 2015, Dr. Sipps worked with Mr. Dollinger to find effective medications and treatment options, consistently noting that Mr. Dollinger was making "gradual progress," "reasonable progress," or "good progress." (*Id.*, PageID #1722–1885.)

Dr. Sipps completed three medical source statements, on check-box forms, regarding Mr. Dollinger's mental capacity. In two August 2015 statements, Dr. Sipps indicated that Mr. Dollinger could only rarely or occasionally make occupational adjustments such as maintaining attention and concentration and responding to

changes.  (*Id.*, PageID #968.)  In March 2017, Dr. Sipps completed a third mental capacity medical source statement.  There, Dr. Sipps checked that Mr. Dollinger had some marked limitations, such as sustaining a work routine and completing tasks in a timely manner, as well as moderate and mild work-related limitations.  (*Id.*, PageID #1270–71.)  As support for this assessment, Dr. Sipps submitted a single treatment record from 2013.  (*Id.*, PageID #1272–73.)  As further support for the medical source statements, Dr. Sipps also attached several letters.  In all the letters, Dr. Sipps summarized Mr. Dollinger's treatment history, diagnoses, and progress.  (*Id.*, PageID #907–74, #1188, #1269 & #1390.)  In a letter dated August 20, 2013, Dr. Sipps wrote that Mr. Dollinger "continues to progress which is, however, limited to a degree by ongoing health circumstances, especially persistent sleep impairment for which he continues to seek specialist treatment for optimization in use of his current CPAP machine."  (*Id.*, PageID #1339.)

Mr. Dollinger continued to see Dr. Sipps through 2018.  During this time, Dr. Sipps noted that Mr. Dollinger continued to progress but suffered from ongoing sleep difficulties, which interfered with his functioning and ability to perform work related tasks.  (*Id.*, PageID #1544–1721.)

> It is my opinion with a reasonable degree of scientific certainty, that he currently is limited in his capacity for remunerative employment due to impairment in his ability to understand, remember, and follow instructions; his ability to maintain attention and concertation with appropriate persistence and pace in the performance of multistep tasks; and his ability to respond appropriately to work pressures in a work setting.

(*Id.*, PageID #970; *see also* PageID #971–74, #1188, #1269 & #1390 (same or substantially similar).)  Dr. Sipps estimated the date on which Mr. Dollinger could return to work, which varied across the letters.  (*Id.*, PageID #907–74, #1188, #1269 & #1390.)

### A.3.  State Agency Consultants

State agency psychologist Jennifer Swain, Psy.D., completed a mental residual functional capacity assessment of Mr. Dollinger in 2013.  Dr. Swain opined that Mr. Dollinger was capable of simple to moderately complex routine tasks in a static environment, occasional contact with coworkers and supervisors, and tasks that do not involve strict time or production standards.  (*Id.*, PageID #233–34.)  On reconsideration in 2014, Kristen Haskins, Psy.D., affirmed Dr. Swain's findings.  (*Id.*, PageID #248–50.)

State agency physician Diane Manos, M.D., completed a physical residual functional capacity assessment of Mr. Dollinger in 2013.  Dr. Manos opined that Mr. Dollinger could occasionally lift or carry twenty pounds, stand or walk for six hours, and frequently climb, stoop, or crouch.  (*Id.*, PageID #231–233.)  On reconsideration, in 2014, Esberdado Villanueva, M.D., affirmed Dr. Manos' assessment.  (*Id.*, PageID #246–47.)

### B.  Administrative Law Judge's Decision

After hearing testimony from Mr. Dollinger and a vocational expert and considering the evidence presented, an administrative law judge issued a written decision denying Mr. Dollinger's applications.  (*Id.*, PageID #59.)  In that decision,

the ALJ outlined and conducted the customary five-step inquiry to determine whether Mr. Dollinger was disabled under Section 1614(a)(3)(A) of the Social Security Act. (*Id*., PageID #63–80.)

At step one, the ALJ found that Mr. Dollinger had not engaged in substantial gainful activity since the alleged onset date, March 20, 2012. (*Id*., PageID #65.) At step two, the ALJ found that Mr. Dollinger had several severe impairments, including asthma, lumbar degenerative disc disease, cognitive disorder, and attention deficit hyperactivity disorder. (*Id*.) The ALJ also found that Mr. Dollinger had headaches and sleep apnea but that those conditions did not pose more than minimal functional limitations. (*Id*.) At step three, the ALJ found that Mr. Dollinger did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (*Id*., PageID #66.)

As to step four, the ALJ found that Mr. Dollinger had the residual functional capacity to perform light work, with several exceptions:

> [H]e should never climb ladders, ropes or scaffolds. He can occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl. The claimant is limited to occasional overhead reaching with his right upper extremity. He should avoid concentrated exposure to fumes, odors, dust, gases and other pulmonary irritants. The claimant is further limited to routine tasks involving no fast-paced work, no strict production quotas, and no more than minimal or infrequent changes in the work setting. He is limited to occasional interaction with the public, coworkers and supervisors.

(*Id.*, PageID #68.)  In determining Mr. Dollinger's residual functional capacity, the ALJ considered Mr. Dollinger's testimony and the evidence in the record, including medical evidence and opinions from Mr. Dollinger's treating physician Dr. Harris, medical evidence and opinions from his treating psychologist Dr. Sipps, and opinions from State agency medical and psychological consultants.

### B.1.   Dr. Harris

In support of his residual functional capacity determination, the ALJ first addressed the medical evidence relating to whether medically determinable impairments existed that could be reasonably expected to cause the alleged symptoms.  (*Id.*, PageID #265.)  First, the ALJ considered Dr. Harris's treatment records arising from Mr. Dollinger's visits on August 28, 2015 and December 9, 2015; and on January 5, February 12, August 10, and November 9, 2016.  (*Id.*, PageID #72–73.)  After considering this medical evidence, along with medical evidence from other sources, the ALJ determined that Mr. Dollinger's impairments could be reasonably expected to cause his alleged symptoms.  (*Id.*, PageID #74.)

Second, turning to the intensity, persistence, and limiting effects of the symptoms, the ALJ considered Dr. Harris's August 28, 2015 and March 28, 2017 opinions.  (*Id.*, PageID #75.)  In both opinions, the ALJ noted, Dr. Harris found that Mr. Dollinger was "limited to less than sedentary exertion."  (*Id.*; *see also id.*, PageID #1148–49 & #1342–43.)   Further, the ALJ wrote that Dr. Harris opined that Mr. Dollinger was "incapable of sustaining gainful employment."  (*Id.*) The ALJ noted that an opinion on whether an individual can work is an issue reserved to the

Commissioner.  (*Id.*, PageID #76.)  Overall, the ALJ granted Dr. Harris's opinions "limited weight" because he found that the record did not support such extreme limitations.  (*Id.*)

### B.2.  Dr. Sipps

As with Dr. Harris, the ALJ first considered the medical evidence relating to whether medically determinable impairments existed that could be reasonably expected to cause the alleged symptoms.  The ALJ summarized Dr. Sipps's continued treatment of Mr. Dollinger from 2013 through 2018 for pain management and attention deficit hyperactivity disorder.  (*Id.*, PageID #69–73.)  Regarding the treatment records, the ALJ found that Dr. Sipps noted what was discussed and that Mr. Dollinger was making "good progress" but included "little in the way of objective evidence."  (*Id.*)

Turning to the intensity, persistence, and limiting effects of the symptoms, the ALJ addressed Dr. Sipps's opinion evidence, which included three medical source statements addressing Mr. Dollinger's mental capacity and supporting letters.  (*Id.*, PageID #76–78.)  The ALJ considered five letters from 2014 and 2015 in which Dr. Sipps opined that Mr. Dollinger was "limited in his capacity for remunerative employment" due to his mental impairments.  (*Id.*, PageID #76.)  The ALJ also considered Dr. Sipps's August 2015 medical source statement in which Dr. Sipps opined that, as of February 2014, Mr. Dollinger had "occasional or rare" mental abilities to make occupational, personal, and social adjustments.  The ALJ accorded these opinions "limited weight" because they were inconsistent with Dr. Sipps's

finding that Mr. Dollinger was making good progress and with other evidence in the record. (*Id.*, PageID #77.)

The ALJ considered a second medical source statement Dr. Sipps completed in August 2015 in which Dr. Sipps opined that, as of August 2015, Mr. Dollinger had "occasional to constant" abilities to make occupational, personal, and social adjustments. (*Id.*) The ALJ also accorded this opinion "limited weight" because it was inconsistent with the record. (*Id.*) However, he noted that the opinion reflected improvement in Mr. Dollinger's cognitive capacity, which was consistent with the record. (*Id.*)

Further, the ALJ considered three letters Dr. Sipps wrote in 2015 and 2016. (*Id.*) In each of the letters, Dr. Sipps opined that Mr. Dollinger continued to make good progress, but that it had been hindered by ongoing health circumstances, and that Mr. Dollinger continued to be unable to engage in employment because of mental impairment. (*Id.*) In each letter, Dr. Sipps provided a different estimate for the date on which Mr. Dollinger could return to work. (*Id.*) The ALJ accorded these opinions "limited weight" because Dr. Sipps did not define Mr. Dollinger's exact limitations or support his findings with objective evidence. (*Id.*) Nor did Dr. Sipps explain how he determined Mr. Dollinger's "return to work" date or why the date kept changing. (*Id.*) Overall, the ALJ found that Dr. Sipps's opinions were inconsistent with the objective evidence in the record. (*Id.*, PageID #77–78.)

Finally, the ALJ considered the March 2017 medical source statement in which Dr. Sipps opined that Mr. Dollinger had either no limitations or moderate or mild

limitations in understanding information, interacting with others, and adapting, and mild to marked limitations in concentrating, persisting, and maintaining pace. (*Id.*, PageID #78.)  The ALJ granted this opinion "some weight" but found that the record did not supported any marked limitations. (*Id.*)

### B.3.  State Agency Consultants

The ALJ assigned "significant weight" to the State agency medical consultants' opinions because they were "generally consistent with the overall evidence." (*Id.*, PageID #75.)  However, the ALJ further restricted Mr. Dollinger's postural limitations to reflect Mr. Dollinger's testimony about his back pain. (*Id.*)  Similarly, the ALJ assigned "considerable weight" to the State agency psychological consultants' opinions because they were "generally consistent with the overall evidence." (*Id.*, PageID #74.)

\*     \*     \*

Finally, at step five, the ALJ determined that Mr. Dollinger could not perform his past relevant work. (*Id.*, PageID #78.)  However, the ALJ determined that Mr. Dollinger can perform other jobs that exist in significant numbers in the national economy given his age, education, work experience, and residual functional capacity. (*Id.*, PageID #79.)  Therefore, the ALJ found that Mr. Dollinger was not disabled and denied his applications. (*Id.*, PageID #80.)  The Appeals Council declined further review, rendering the ALJ's decision final on December 5, 2019. (*Id.*, PageID #52.)

### C.  Report and Recommendation

Mr. Dollinger timely filed this action on January 9, 2020, seeking judicial review pursuant to 42 U.S.C § 405(g).  (ECF No. 1.)  The Magistrate Judge issued a report and recommendation that the Court affirm in part and reverse and remand in part the ALJ's decision denying Mr. Dollinger's applications.  (ECF No. 15, PageID #2053.)  Plaintiff made two arguments on appeal:  (1) the ALJ erred in assigning little weight to the opinions of Mr. Dollinger's treating physician Dr. Harris and treating psychologist Dr. Sipps; and (2) substantial evidence did not support the ALJ's residual functional capacity determination.  (ECF No. 12, PageID #2019–31.)

Beginning with Plaintiff's contention that the ALJ assigned too little weight to the opinions of his treating physician and psychologist, the Magistrate Judge described the requirements for evaluating a treating source opinion.  (ECF No. 15, PageID #2094.)  Namely, the treating source opinion must be given "controlling weight" if the opinion is well supported by medical evidence and is not inconsistent with other substantial evidence.  (*Id.*)  If a treating source opinion is inconsistent with other substantial evidence, the opinion is still entitled to deference and must be weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the degree to which it is consistent with and supported by other relevant evidence.  (*Id.*, PageID #2094–95.)  If the ALJ determines a treating source opinion is not entitled to controlling weight, the ALJ must give "good reasons" for discounting it.  (*Id.*, PageID #2095.)

12

Addressing the ALJ's analysis of Dr. Harris's opinions, the Magistrate Judge agreed with Plaintiff that the ALJ failed to determine whether he should accord "controlling weight" to Dr. Harris's opinions.  (*Id.*, PageID #2098.)  Regarding the two medical source statements that Dr. Harris completed, both check-box forms without any explanation for the findings, the Magistrate Judge determined that the forms were "patently deficient" and, therefore, the ALJ's failure to comply with the treating source analysis was harmless error.  (*Id.*, PageID #2099.)

However, the Magistrate Judge found that the ALJ also "weighed and considered another opinion from Dr. Harris, contained in treatment notes dated August 8, 2015."  (*Id.*)  Describing this opinion, the Magistrate Judge quoted in full Dr. Harris's statement from the section titled "recommendations."  (*Id.*)  Summarizing Dr. Harris's notes and the results from the physical examination contained in the same treatment record, the Magistrate Judge determined that the ALJ's failure to conduct a controlling weight analysis as to that opinion constituted reversible error.  (*Id.*, PageID #2100.)  Further, the Magistrate Judge determined that the ALJ failed to provide "good reasons" for rejecting Dr. Harris's opinion.  While the ALJ found that the opinion was inconsistent with other evidence, the ALJ only cited two purportedly inconsistent treatment records and failed to analyze how the findings in those records detracted from Dr. Harris's opinion.  (*Id.*, PageID #2101.)  Accordingly, the Magistrate Judge recommended that the Court remand the matter to allow the ALJ to evaluate and explain the weight ascribed to the limitations assessed by Dr. Harris.  (*Id.*)

13

Similarly, the Magistrate Judge determined that the ALJ failed to conduct the controlling weight analysis or give "good reasons" for discounting the opinions of Dr. Sipps.  (*Id.*, PageID #2104.)  Like Dr. Harris, Dr. Sipps completed medical source statements that were check-box forms.  (*Id.*)  However, Dr. Sipps also attached a series of letters stating that Mr. Dollinger was limited in his ability to maintain employment because of his cognitive capacity.  (*Id.*, PageID #2104–05.)  Additionally, Dr. Sipps attached a treatment record to one of the medical source statements.  (*Id.*, PageID #2105.)  The Magistrate Judge agreed with the ALJ that Dr. Sipps's letters and other treatment notes contained little "objective evidence," which must support a treating source opinion for the opinion to be treated as controlling.  (*Id.*, PageID #2105.)  However, the Magistrate Judge noted that the ALJ would have the opportunity to reconsider Dr. Sipps's opinions were the Court to remand the matter for reconsideration of Dr. Harris's opinion.  (*Id.*)

Finally, the Magistrate Judge addressed Plaintiff's contention that substantial evidence did not support the ALJ's determination of his residual functional capacity.  (*Id.*, PageID #2105.)  Plaintiff argued that the ALJ erroneously gave considerable weight to State medical consultants' opinions, erroneously dismissed the treating source opinions, and ignored medical evidence supporting more restrictive limitations.  (*Id.*, PageID #2105–06.)  The Magistrate Judge noted that he had previously recommended remanding the case because of the ALJ's error analyzing Dr. Harris's opinion and that proper consideration of that opinion on remand might affect the ALJ's residual functional capacity findings.  (*Id.*, PageID #2106.)  However,

14

the Magistrate Judge found that the ALJ had not committed separate error in determining the residual functional capacity.  (*Id.*, PageID #2108.)

### D.    The Commissioner's Objections

The Commissioner objects to the Report and Recommendation, arguing that the Magistrate Judge's decision rests on an "incorrect assumption." (ECF No. 16, PageID #2110.)  The Commissioner contends that Dr. Harris's August 28, 2015 statement contained in the "recommendations" section of the treatment record constitutes only a "recommendation" and not an "opinion" under the governing regulations.  (*Id.*)  Because the statement was not an "opinion," the Commissioner argues that "the statement did not need to be weighed as an opinion" and did not "necessitate any particular mode of analysis."  (*Id.*, PageID #2111.)

## ANALYSIS

The Court reviews de novo portions of a magistrate judge's report and recommendation to which specific objections are made.  28 U.S.C. § 636(b); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).  "Objections must be specific, not general" and should direct the Court's attention to a particular dispute.  *Howard v. Secretary of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  "De novo review requires the Court to re-examine the relevant evidence a magistrate judge reviewed to determine whether to accept, reject, or modify the report and

recommendation." *Scott v. Saul*, No. 1:19-cv-2393, 2021 U.S. Dist. LEXIS 92052, at *12-13 (N.D. Ohio May 14, 2021); *see* 28 U.S.C. 636(b).

Where a party objects, review is limited to determining whether substantial evidence in the record supports the Commissioner's decision to reviewing any legal errors. *Wright v. Massanari*, 321 F.3d 611, 614–15 (6th 2003). "Substantial evidence" is more than a scintilla, but less than a preponderance. *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* If substantial evidence supports the Commissioner's findings, then the Court accepts them as conclusive, even if it would have reached a different outcome on the same facts. 42 U.S.C. § 405(g).

## I.    Treating Source Opinions

The ALJ determined, and the Commissioner does not dispute, that both Dr. Harris and Dr. Sipps are treating sources. (ECF No. 9, PageID #75–76.) The regulations in place at the time Mr. Dollinger filed his applications required the ALJ to give a treating physician's opinion "controlling weight," unless the opinion was not "supported by medically acceptable clinical and laboratory diagnostic techniques" or inconsistent with the other medical evidence in the record. *Gayheart v. Commissioner of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). If the ALJ does not give a treating source opinion controlling weight, the ALJ must weigh the opinion based on the length and frequency of treatment, the supportability of the opinion, the consistency of the opinion with the record as a whole, and whether the treating physician is a

specialist. *Id.* Further, the ALJ must articulate "good reasons" for discounting the opinion. *Id.*

If the ALJ fails to give good reasons for discounting a treating source opinion, the Court must reverse and remand a denial of benefits, even though "substantial evidence otherwise supports the decision of the Commissioner." *Friend v. Commissioner of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 543–46 (6th Cir. 2004)). However, the ALJ's violation of the treating source rule might be "harmless error" if "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) the Commissioner has met the goals of § 1527(d)(2) . . . even though [the Commissioner] has not complied with the terms of the regulation." *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011).

### I.A.   Dr. Harris

To begin, the Magistrate Judge found that Dr. Harris's August 28, 2015 and March 28, 2017 medical source statements constituted treating source opinions. (ECF No. 15, PageID #2099.)  Because the ALJ failed to conduct a controlling weight analysis or provide good reasons for discounting these opinions, the Magistrate Judge determined that the ALJ committed error.  (*Id.*)  However, the Magistrate Judge noted that the medical source statements were completed on check-box forms with no explanation for the findings beyond listing Mr. Dollinger's diagnoses.  Accordingly, the Magistrate Judge determined that the ALJ's failure to conduct a treating source

analysis as to Dr. Harris's medical source statements was harmless error. (*Id.*) The Court agrees. *See Hernandez v. Commissioner of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016) (failure to conduct the treating source analysis was harmless error because the check-box medical source statement was "patently deficient").

The Commissioner disputes the Magistrate Judge's analysis of a statement by Dr. Harris contained in the August 28, 2015 treatment record. (ECF No. 16, PageID #2110.) The Commissioner objects on the ground that the Magistrate Judge inaccurately characterized Dr. Harris's statement in the "recommendations" section of the August 28, 2015 treatment record as an "opinion." (ECF No. 16, PageID #2110.)

On review of the ALJ's decision, it is not entirely clear which evidence the ALJ analyzed as Dr. Harris's opinion because the ALJ identified the opinion only by its date of August 28, 2015. On that date, Dr. Harris completed both a check-box form medical source statement and a treatment record. However, the structure of the ALJ's opinion suggests that the ALJ was referring, at least primarily, to the August 28, 2015 medical source statement. In determining Mr. Dollinger's residual functional capacity, the ALJ considered both objective medical evidence and opinion evidence. Discussing the objective medical evidence, the ALJ considered all of Dr. Harris's treatment records, including the August 28, 2015 treatment record. (*Id.*, PageID #72–73.) After turning to the opinion evidence, the ALJ considered Dr. Harris's August 28, 2015 and March 28, 2017 opinions. (*Id.*, PageID #75–76.) This structure suggests that the ALJ was addressing Dr. Harris's opinions in the August 28, 2015 and March 28, 2017 medical source statements.

In his discussion of Dr. Harris's opinion evidence, the ALJ cited both the August 28, 2015 medical source statement and the August 28, 2015 treatment record. (ECF No. 9, PageID #76.) The ALJ summarized Dr. Harris's opinion as finding that Mr. Dollinger was "limited to less than sedentary exertion." (ECF No. 9, PageID #76.) This determination is what Dr. Harris addressed in the August 28, 2015 medical source statement, in which Dr. Harris described Mr. Dollinger's physical capacity to perform work-related functions, such as lifting or carrying and standing, walking, or sitting. (*Id.*, PageID #1148–49.) The ALJ appeared to cite the August 28, 2015 treatment record specifically to address Dr. Harris's statement that Mr. Dollinger was "incapable of sustaining gainful employment." (*Id.*, PageID #76.) The ALJ noted that an opinion on whether an individual can work goes to an issue reserved to the Commissioner and, therefore, cannot be given "special significance." (*Id.*)

Based on its review of the record, the Court determines that the ALJ's analysis of Dr. Harris's August 28, 2015 opinion addressed the medical source statement, not the treatment record. To the extent the ALJ addressed Dr. Harris's statements in the treatment record, the ALJ did so only to note that Dr. Harris had commented on Mr. Dollinger's ability to work, which is an issue reserved to the Commissioner. As the Court determined above, the ALJ's failure to conduct the treating source analysis on the check-box form medical source statement was harmless error.

Further, the Court determines that the ALJ did not err in his analysis of Dr. Harris's statement about Mr. Dollinger's ability to work, which is an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d). The treating source rule

applies only to medical opinions. "If the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, the claimant's RFC, or the application of vocational factors—the ALJ's decision need only explain the consideration given to the treating source's opinion." *Johnson v. Commissioner of Soc. Sec.*, 535 F. App'x 498, 505 (6th Cir. 2013) (cleaned up). The opinion "is not entitled to any particular weight." *Turner v. Commissioner of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010).

### I.B.  Dr. Sipps

The Magistrate Judge did not directly decide whether the ALJ's failure to conduct a treating source analysis on Dr. Sipps's opinions was harmless error. Rather, the Magistrate Judge wrote: "Nevertheless, as the undersigned recommends this matter be remanded for proper weighing and articulation of Dr. Harris's August 2015 opinion in formulating the RFC, the ALJ will have the opportunity to reconsider Dr. Sipps's opinions in his RFC analysis and determination." (ECF No. 15, PageID #2105.) The Commissioner did not object to the Magistrate Judge's findings pertaining to Dr. Sipps's opinions. Nonetheless, the Court briefly addresses whether the ALJ's treatment of Dr. Sipps's opinions necessitates remand of this case.

The Magistrate Judge noted that Dr. Sipps, like Dr. Harris, completed three medical source statements on check-box forms. (ECF No. 15, PageID #2104.) As discussed above, a check-box form, not accompanied by any explanation, is "patently deficient." *Hernandez*, 644 F. App'x at 474–75. However, unlike Dr. Harris, Dr. Sipps referenced attachments as support for his statements, including a series of letters

20

and one treatment record.  (ECF No. 15, PageID #2104–05.)  The ALJ noted that Dr. Sipps's treatment records contained little objective evidence about Mr. Dollinger's mental status.  (ECF No. 9, PageID #70–71 & #73.)  Similarly, the Magistrate Judge found that the attached letters contained "little in the way of objective evidence."  (ECF No. 15, PageID #2105.)

On review, the Court agrees with the Magistrate Judge that the letters do not contain sufficient objective evidence to support Dr. Sipps's opinions.  All the letters followed the same format and espoused the same opinion—that Mr. Dollinger was limited in his capacity for remunerative employment due to mental impairment.  The letters do not provide a medical basis for that opinion, or for the opinions contained in the medical source statements.  In the ALJ's extensive analysis of Dr. Sipps's opinions, the ALJ determined that the objective evidence and Dr. Sipps's own treatment notes indicated that Mr. Dollinger was not as limited as Dr. Sipps's opinions suggested.  (ECF No. 9, PageID #77–78.)  The ALJ cited as supporting evidence the medical records indicating that Mr. Dollinger showed no impairment in his ability to concentrate and attend to tasks, showed no deficits in judgment, and was in the average range of intellectual functioning.  (*Id.*)  Given the minimal explanation and the lack of objective evidence supporting Dr. Sipps's opinions, the Court concludes that any error is harmless.

## CONCLUSION

The Court **SUSTAINS** the Commissioner's objection (ECF No. 16), **DECLINES TO ADOPT IN PART** the Magistrate Judge's Report and

Recommendation (ECF No. 15), and **AFFIRMS** the Commissioner's final decision denying Mr. Dollinger's applications.  The Court **DIRECTS** the Clerk to enter judgment accordingly.

      **SO ORDERED.**

Dated:  February 17, 2022

                                        _____
                                             J. Philip Calabrese
                                           United States District Judge
                                           Northern District of Ohio